UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

:

SHANNON VAN HORN, *et al.*                    :

                                                              :       CASE NO. 1:08-cv-605

          Plaintiffs,                                  :

                                                              :

vs.                                                         :       OPINION & ORDER

                                                              :       [Resolving Docs. No. 87-1, 90-1, 92, 93.]

NATIONWIDE PROPERTY AND          :

CASUALTY INSURANCE                      :

COMPANY, *et al.*                                  :

                                                              :

          Defendants.                                :

                                                              :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

          The Plaintiffs move this Court to certify a class in this action against the Defendants
Nationwide. [Doc. 87-1.] The Defendant opposes this motion. [Doc. 90-1.] In resolving this motion
to certify a class, this Court must decide whether the Plaintiff's claims will be efficiently adjudicated
as a class action.  For the reasons stated below, this Court **GRANTS** the Plaintiffs' motion to certify
but will narrow the scope of the class.

## I. Background

          The Plaintiffs ask this Court to certify a Rule 23(b)(3) class of those individuals harmed by
Nationwide's alleged company-wide policy to terminate car rental benefits before the contractually
promised time. [Doc. 87-1.] This breach of contract is the Plaintiff's sole claim before this Court.
[Doc. 81 at 11.]

          The Plaintiffs' claims generally arise when an individual holding an insurance policy with
Nationwide has an auto accident that causes repair costs that exceed the vehicle's value.  *See* [Doc.
81 at 6.] If Nationwide is satisfied that the vehicle cannot be reasonably repaired, it will characterize

Case No. 1:08-cv-605
Gwin, J.

the vehicle as a total loss.  *See* [Doc. 81 at 6.] In the insurance policies applicable to the putative

class, Nationwide promises to cover the expense for car rental benefits for 30 days when it

characterizes the car as a total loss. [Doc. 81 at 6; Doc. 87-10, Ex. 26 at 13.] In one set of policies,

Nationwide promises a maximum of 30 days but says that it will not be obligated to continue paying

car rental benefits if the policyholder agrees to a settlement of the claim.  In a second set, Nationwide

promises 30 days of car rental benefits that is not conditioned on settlement. [Doc. 87-10, Exs. 22-30

at 4-21.]

The Plaintiffs say Nationwide has a national practice of breaching their insurance contracts

by simultaneously communicating (1) an offer for settlement and (2) a termination of car rental

benefits irrespective of settlement, before the expiration of the promised 30 days.  [Doc. 92 at 7 ("It

is Plaintiffs' contention that Nationwide breached its insurance contract when it prematurely

terminated policyholders' car rental benefits by informing policyholder' *at the time that it makes a*

*total settlement **offer*** that it will stop paying for the policyholders' rental vehicle on a specific date

and/.or directing policyholder to return the rental vehicle by a specific date (*i.e.*, informing the

policyholder of that a termination date has been set.") (emphasis in original).]

The Plaintiffs' propose a Rule 23(b)(3) class defined as:

> All individuals and entities who: (i) had an automobile policy with one of the Named
> Defendants that contained a rental reimbursement endorsement that had no early
> termination provision or only could be terminated early when "a total settlement is
> agreed to"; (ii) experienced a total loss and rented a car; and (iii) received less than
> 30 days car rental benefits.

[Doc. 87-1 at 13.]

*I.A.*    *Class Certification*

Federal Rules of Civil Procedure Rule 23 outlines the requirements for class certification.

Case No. 1:08-cv-605
Gwin, J.

FED. R. CIV. P. 23.  Rule 23(a) contains four prerequisites: numerosity, commonality, typicality, and adequacy of representation.  *Id.*  The Plaintiffs seek certification of a 23(b)(3) class action, and therefore must also demonstrate that common questions of law or fact predominate, and that the class action is a superior method of adjudicating the Plaintiffs' claims.

The party seeking certification bears the burden of proof. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996).  A district court does not evaluate the merits of a claim at the class certification stage.  *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-178 (1974).  But a district court may need "to probe behind the pleadings before coming to rest on the certification question." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160 (1982).  In this inquiry, the district court considers "what will have to be proved at trial and whether those matters can be presented by common proof or whether individual proof will be required."  7AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1785.

In determining whether to certify the Plaintiff's proposed class, this Court will first provide a detailed description of the Plaintiffs' claims and then evaluate these claims under the Rule 23 requirements.

I.A.    *Background Facts*

Four representative Plaintiffs filed this suit on behalf of themselves and others similarly situated: Shannon Van Horn, Sandra Prosser, Joelle Quade, and Kathleen Carbon.  All of the putative representative Plaintiffs had damage to their vehicles that Defendant Nationwide characterized as a total loss. [Doc. 81 at 6-8.] The Plaintiffs' complain that Defendant Nationwide breaches their insurance contracts during the settlement process.  To determine whether these claims should be adjudicated in a class action, we will examine the policy language applicable to the putative class and

-3-

Case No. 1:08-cv-605
Gwin, J.

then discuss the settlement process that the Plaintiffs' complain of.

### I.A.1.  Policy Language

In discovery for this pending litigation, Nationwide has provided the Plaintiffs with copies of their policy endorsements governing car rental benefits. [Doc. 87-10, Ex. 21 at 2.] Nationwide has provided several different endorsements that the Plaintiffs have classified into three types. [Doc. 87-10, Ex. 21 at 2.] The Plaintiffs divide the provided endorsements into three types based on the language used in the endorsements.  The putative class action involves two of those types.

Endorsement 3022 applies to the type 1 sub-class. The Defendant Nationwide had issued Endorsement 3022 to Plaintiffs Van Horn, Carbon, and Quade.  Under Endorsement 3022, when an insured incurs a total loss, Nationwide  promised to cover the insured's car rental expenses for "a) for 30 consecutive days; or b) until your auto is repaired; or c) until a total settlement is agreed to; whichever comes first." [Doc. 87-10, Ex. 26 at 13.] The 30 day period of covered car rental expenses "begins when [the] auto cannot run due to a covered loss; or if [the] auto car run, when left at a shop for agreed repairs."  [Doc. 87-10, Ex. 26 at 13.] The type 1 endorsements all involve this same conditional 30 day language.  Type 1 endorsements will be referred to below as "settlement-conditioned 30 day endorsements."

Endorsement 3169 is a type 1 conditional 30 day endorsement, but has different terms that control when the 30 day period begins.  Defendant Nationwide issued Endorsement 3169 to Plaintiff Prosser.  Under Endorsement 3169, when an insured had a total loss, Nationwide promised to pay car rental expenses "a) for 30 consecutive days; or b) until your auto is repaired; or c) until a total settlement is agreed to; whichever comes first."  [Doc. 87-10, Ex. 27 at 15.] Here, the 30 day period of covered car rental expenses "begins when [the] auto is withdrawn from use for more than 24 hours

-4-

Case No. 1:08-cv-605
Gwin, J.

due to a covered loss; or if your auto can run, when left at a shop for agreed repairs." [Doc. 87-10, Ex. 27 at 15.]

Endorsement 1955 represents type 2. Nationwide did not issue the type 2 endorsements to any of the named Plaintiffs. This Endorsement 1955 provides 30 days of car rental expense coverage without limitation: "[coverage] begins when [the] described auto cannot run due to a covered loss; or, if the auto can run, when you leave it at the shop for agreed repairs. It continues for 30 consecutive days." [Doc. 87-10, Ex. 30 at 21.][1/] Type 2 endorsements all contain the unconditional 30 day language. Type 2 endorsements will be referred to below as "unconditional 30 day endorsements."

Type 3 endorsements, which the Plaintiffs do not include within the putative class, do not contain any 30 day language, but instead extend car rental benefits for "that period of time reasonably required to repair or replace the auto." [Doc. 87-10, Ex. 21 at 2.]

Under the Plaintiffs' theory of the case, the differences in policy language affect damages and not liability. The Plaintiffs' say Nationwide has a practice of breaching its policies when it communicates a settlement offer and a sets a date for termination of car rental benefits before the promised 30 days. The Plaintiffs do not rely upon the fact that policyholders did not receive 30 days car rental benefits. Under the Plaintiffs' theory, "the events that transpire after the breach has occurred is irrelevant for the determination of the breach." [Doc. 92 at 7.] The breach is said to be the communication, and not the amount of car rental expenses paid. *Id.* ("The actual date on which the car rental is returned is relevant to the calculation of damages.").

---

[1/] The Plaintiffs attached several other endorsements in use that contain the same conditional 30 day language as employed in Endorsement 3022. [Doc. 87-10, Exs. 22-29.] The Plaintiffs additionally provide several other endorsements that contain the unconditional 30 day language as Endorsement 3169. [Doc. 87-10, Exs. 30-37.]

Case No. 1:08-cv-605
Gwin, J.

The Plaintiffs propose a class limited to those Nationwide policyholders that had type 1 and type 2 endorsements–those endorsements with the settlement-conditional 30 day language, and those endorsements with the unconditional 30 day language.

### I.A.2.   Settlement Process

The policy language in the conditional 30 day endorsements above allows Nationwide to stop covering rental car expenses when Nationwide and the insured agree to a total settlement.  The Plaintiffs say that the breach occurs when the Defendant simultaneously offers to settle and says it will terminate rental car benefits.  Below this Court will outline the settlement process for the four representative Plaintiffs and the evidence that the Plaintiffs' have submitted to demonstrate that this alleged breach was Nationwide's company policy.

### I.A.2.a.        The Settlement Process for the Four Named Plaintiffs

Nationwide offered settlements to each of the four putative representative Plaintiffs.  But Nationwide's handling of the settlement process was different in each case.

In Plaintiff Van Horn's case, Nationwide wrote Plaintiff Van Horn a letter around seven day's after her auto accident stating that it would only pay her car rental benefits for three more days.  This letter also contained a settlement offer for the insurance claim on her car. [Doc 81 at 6.] Van Horn returned her rental car and accepted the settlement offer within that three days.

In Plaintiff Prosser's case, Nationwide called Prosser around 15 days after Plaintiff Prosser's auto accident and offered  a settlement for the total loss of her vehicle and "at the same time [told her that] her rental car benefits were being terminated and the [rental] car had to be returned the next day." [Doc. 81 at 7 (emphasis removed).]

In Plaintiff Quade's case, Nationwide called Quade about seven days after her accident to

-6-

Case No. 1:08-cv-605
Gwin, J.

offer a settlement and "after offering her a settlement . . . , told her at the same time that she had to return her rental car [within] three days." [Doc. 81 at 8.]

In Plaintiff Carbon's case, Nationwide called her around three days after her auto accident and offered her a settlement and at the same time told her that she had to return her rental car within five days. [Doc. 81 at 8.] Carbon rejected the settlement offer but still returned the car "because Nationwide told her she had to do so." [Doc. 81 at 8.]

The claims are all different because of the amount of time between the auto accident and the settlement offer. But, more importantly, Plaintiff Van Horn's claim is different factually than the other three claims because Nationwide first communicated the settlement offer and termination of car rental benefits to Plaintiff Van Horn though a form letter. Nationwide communicated a settlement offer to the other three Plaintiffs over the phone.

### I.A.1.b.    Evidence of Company-Wide Settlement Policy

The Plaintiffs say that the experiences of these putative representative Plaintiffs reflect Nationwide's national policy and procedure for handling car rental benefits. To support their contention that this is a national policy, the Plaintiffs point to the deposition testimony of Walter Kenneth Coats, Nationwide's Material Damage Technical Director. [Doc. 87-8, Ex. 8 at 28-62.]

Coats testified that Nationwide promulgates to all Nationwide companies a set of "Best Practices" that "offer guidance to the adjuster in the field." [Doc. 87-8, Ex. 8 at 22, 27.] The purpose of the Best Practices is to ensure "uniformity" across all of the Nationwide employees. [Doc. 87-8, Ex. 8 at 37.]

Nationwide also promulgated a "process outline" for rental claims to establish "a consistent process throughout the regions of Nationwide and its companies." [Doc. 87-8, Ex. 8 at 43.] Under

-7-

Case No. 1:08-cv-605
Gwin, J.

this procedure outline, a Nationwide employee is to "make an offer, negotiate, reach settlement and decide on additional rental if necessary.  Rental authorization should not extend for more than 3 days beyond the first offer unless authorized by the Claims Manager." [Doc. 87-8, Ex. 1 at 2.] Coats testified that the policy across all Nationwide companies was that "Rental authorization should not extend for more than three days beyond the first offer . . . [u]nless authorized by the claims manager in the electronic claims system." [Doc. 87-10, Ex. 8 at 44.] This policy was implemented to "minimize the overall cycle time of a the total loss claim."  [Doc. 87-10, Ex. 8 at 45.]

The Plaintiffs do not clearly demonstrate Nationwide's policy on how the first settlement offer should occur.  Plaintiff Van Horn received a form letter that simultaneously offered settlement and notified Van Horn that Nationwide would terminate her benefits in three days. [Doc. 82 at 6.]  But Plaintiffs Prosser, Quade, and Carbon all receive settlement offers over the telephone.

The Plaintiffs say that during these phone calls Nationwide simultaneously offered settlement and notified the Plaintiffs that Nationwide would terminate their car rental benefits.  Nationwide instructs its employees on what to say when making a settlement offer.  [Doc. 87-8, Ex. 3 at 7.]

Subsequent to the initial settlement offer, the process outline provides that "[i]nitial rental communication [to the insured] should be followed up with the standard rental form letter that confirms the terms and conditions of the rental."  [Doc. 87-8, Ex. 1 at 5.] The process outline does not limit the sending of the form letter to only those cases where the insured had already settled.

Nationwide maintains a database of these form letters to ensure "consistency throughout the claims process through various regions." [Doc. 87-8, Ex. 7 at 47.] The letters had blanks to be filled in, (e.g., the date the amount of settlement, the date when rental benefits would be terminated) but other than the blanks, Nationwide employees were not to change the content of the letters.  [Doc. 87-

Case No. 1:08-cv-605
Gwin, J.

8, Ex. 7 at 48-49.] One form letter from 1998 says, "The offer was made in the amount of $ [_____]." The form letter continues, "[w]e'd like to remind you [that] [p]ayment for your rental car will end on [_____]." [Doc. 87-8, Ex. 4 at 9.] Although the instructions do not explicitly direct the car rental be withdrawn when the offer is made, Coats testified that, for at least the last two years, Nationwide company policy directed employees to fill in the car-rental-benefits blank space simply by adding three days from the date of the offer. [Doc. 87-8, Ex. 7 at 58.][2/]

Nationwide monitored employees to "assure that . . . Best Practices were followed by adjustment staff." [Doc. 87-8, Ex. 7 at 30.] One criteria that Nationwide employees were evaluated on was the "actual number of rental days." [Doc. 87-8, Ex. 5 at 13, Ex. 6 at 19.]

I.B.    *The Plaintiffs' Motion for Class Certification*

Based on the above-outlined allegations, the Plaintiffs ask this Court to certify a Rule 23(b)(3) class defined as:

> All individuals and entities who: (i) had an automobile policy with one of the Named Defendants that contained a rental reimbursement endorsement that had no early termination provision or only could be terminated early when "a total settlement is agreed to"; (ii) experienced a total loss and rented a car; and (iii) received less than 30 days car rental benefits.

[Doc. 87-1 at 13.] In asking this Court to certify the class, the Plaintiffs say that Nationwide breached their obligations under their insurance policies. "[U]nder the Plaintiffs' theory of this case[,] the breach occurs the moment Nationwide tells policyholders that their car rental benefits will be terminated in a few days - when Nationwide does not have the contractual right to do so." [Doc. 92 at 4.]

---

[2/] The Plaintiffs motion for class certification does not concern the settlement process that occurs after Nationwide sends this form letter. While the facts occurring after this letter may be relevant to the amount of individual damages, this does not affect our decision on class certification.

Case No. 1:08-cv-605
Gwin, J.

At oral argument, the Plaintiffs, relying on *Combs v. International Insurance Co.*, 354 F.3d 568 (6th Cir. 2004), further developed their repudiation theory of the case. [Doc. 103 at 3, 70.] In *Combs*, the Sixth Circuit held that "courts have frequently recognized anticipatory repudiation in insurance coverage disputes, and insurance policies are unilateral agreements." *Combs*, 354 F.3d at 600 (citations omitted). *Combs* cited cases in multiple jurisdictions around the country allowing anticipatory repudiation in insurance contracts. *Id.* at 600-601. While *Combs* ostensibly dealt with Kentucky law, at least one federal court applying Ohio law has, citing *Combs*, held that "a party to a unilateral contract may bring suit immediately upon the anticipatory breach. *Reliance Ins. Co. v. Keybank U.S.A.*, No. 1:01 CV 62, 2006 WL 2850454, *31 (N.D. Ohio Sept. 29, 2006).[3/]

Responding, Nationwide says that the Plaintiffs' defined class is overbroad because it includes those policyholders that accepted a Nationwide settlement offer before the expiration of the 30 days. The Defendant says that, if Nationwide ends car rental benefits after the policyholder accepts a settlement offer, then the termination of car rental benefits does not violate the policy language. [Doc. 90-1 at 4.]  Additionally, the Defendant says that determining whether Nationwide breached the policy language is a fact intensive inquiry that varies from insured to insured. [Doc. 90-1 at 15.]

---

[3/] Defendant Nationwide, in its motion for summary judgment, says that the Plaintiffs' claims fail because the "'doctrine of anticipatory repudiation [of contracts] does not apply to executory contracts for the payment of money only.'" [Doc. 100 at 2 (quoting *Burke v. Athens*, 703 N.E.2d 804, 807 (9 Dist. 1997)).] This holding only covers Ohio law and appears to be limited to a very narrow class of contracts. *See Burke*, 703 N.E.2d at 805, 807 (holding anticipatory repudiation inapplicable to a "secured discount note"); *Crouse v. Nantucket Village Development Co.*, 460 N.E.2d 1389, 1391 (Ohio App. 1983) (noting anticipatory repudiation is inapplicable to negotiable instruments and mortgages); *compare Federal Life Ins. Co. v. Rascoe*, 12 F.2d 693, 695 (6th Cir. 1926) (reversed on other grounds) (holding that an insurance contract that required the insured to submit records to insurance company every 30 days was not "a unilateral contract for the unconditional payment of money, such as a bond or a promissory note").

While a district court is not to consider the merits of a claim at the certification stage, a court must consider whether the representative plaintiff is adequate. If this Court holds at the summary judgment stage that Ohio law precludes the theory of anticipatory repudiation, this Court has authority to "order the joinder of additional representatives to ensure the adequate representation of the class." 7A WRIGHT & MILLER § 1765.

Case No. 1:08-cv-605
Gwin, J.

## II.  Analysis

A district court has broad discretion in class certification, but before certifying class, a district court should conduct "a rigorous analysis" of the Rule 23 requirements.  *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982).  Rule 23(a) itself contains four prerequisites for a class action: numerosity, commonality, typicality, and adequacy of representation.  FED. R. CIV. P. 23(a).  If a plaintiff seeks class certification under Rule 23(b)(3), the rule additionally requires that the common questions of law or fact predominate over individual questions and that a class action is a superior method for adjudicating the class claims.  FED. R. CIV. P. 23(b)(3).

This Court will first address the Rule 23(a) prerequisites and then the rules 23(b)(3) requirements.

### II.A.   Rule 23(a)

Before addressing the 23(a) requirement, this Court first addresses the adequacy of the Plaintiffs' class definition.  *See* 7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1760 ("Although not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a 'class.'") A class must include those "individuals who are raising the same claims . . . as the representative." *Id.*

As will be explained more fully below in discussion of the Rule 23(a) requirements, the Plaintiffs' proposed class is overbroad.  The Plaintiffs claim that Defendant Nationwide breached its insurance contracts when it simultaneously offered settlement and unequivocally stated that it would stop covering car rental expenses.  The Plaintiffs' proposed class definition, however includes those individuals that never received the allegedly breaching communication but voluntarily settled their claims before the expiration of the 30 days.  These voluntarily settling individuals fall outside of the

-11-

Case No. 1:08-cv-605
Gwin, J.

Plaintiffs' theory of the case. *See* [Doc. 92 at 4 ([T]he breach occurs the moment Nationwide tells

policyholders that their car rental benefits will be terminated in a few days – when Nationwide does

not have a contractual right to do so.).]

The Plaintiffs say that a policyholder who "(i) had an applicable endorsement, (ii) had a total

loss and (iii) received less than 30 days of rental benefits must have receive a total loss settlement

offer from Nationwide which prematurely terminated the policyholder's car rental benefits," has a

valid cause of action.  [Doc. 92 at 7.] This is incorrect because a policyholder may have agreed to a

settlement and then received a form letter from Nationwide reminding them of their settlement and

terminating rental benefits.  The fact that a policyholder did not receive 30 days of rental benefits does

not, on its own, show that the policyholder received an allegedly breaching communication.

But the Plaintiffs have  adequately presented a class action claim on a more narrow class.  A

district court "has discretion to limit or redefine the class in an appropriate manner to bring the action

within Rule 23." 7A WRIGHT & MILLER § 1760.  Accordingly, the Court narrows the Plaintiffs' class

definition to:

> All individuals and entities who: (i) had an automobile policy with one of the Named
> Defendants that contained a rental reimbursement endorsement that had no early
> termination provision or only could be terminated early when "a total settlement is
> agreed to"; (ii) experienced a total loss and rented a car; and (iii) before agreeing to
> a settlement offer from Nationwide, received a communication from Nationwide that
> (1) offered a settlement, and (2) set a date on which Nationwide would terminate car
> rental benefits that was (a) before the expiration of the endorsement defined 30 days
> and was (b) not conditioned on reaching a settlement before termination.

Below, in examination of the Rule 23(a) class prerequisites and the Rule 23(b)(3) class

requirements, this Court will describe why this is the broadest class that the Plaintiffs' can maintain.

*II.A.1. Numerosity*

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

-12-

Case No. 1:08-cv-605
Gwin, J.

impracticable." FED. R. CIV. P. 23(a)(1).  Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test for determining when too many parties make joinder impracticable, and the court should look to the specific facts of each case. *Senter v. General Motors Corp.,* 532 F.2d 511, 523 n.24 (6th Cir. 1976), *cert. denied,* 429 U.S. 870 (1976).  The practicability of joinder depends on the size of the class, the ease of identifying members, the ability to make service, and their geographic dispersion.  However, "impracticable" does not mean "impossible."  A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient.  Numbers alone are not determinative of this question. *Golden v. City of Columbus,* 404 F.3d 950, 965 (6th Cir. 2005).[4/]

Here, Nationwide admits that 20,000 Nationwide policy holders fit the Plaintiffs' originally proposed class definition. [Doc. 87-8 at 24.]   The Defendants do not dispute that they have 20,000 policy holders that had a total loss and that did not receive 30 days of car rental benefits.  Rather the Defendant contends that "this number does not shed light on how many of these policyholders agreed to a total loss settlement before their automobile rental benefits were terminated, and would therefore not have a cognizable claim against the nationwide Defendants under the theory of liability asserted by the Plaintiffs." [Doc. 90-1 at 9.] The narrowed scope of the class ameliorates the Defendant's concern here. The narrowed Plaintiffs' class is remains "so numerous that joinder of all members is

---

[4/] *See also* Taylor v. CSX Transp., 2007 WL 2891085, at *3 (N.D. Ohio 2007) (noting that "although no firm numerical test exists, 'substantial' numbers are usually enough to satisfy the numerosity requirement, and 'it is generally accepted that a class of 40 or more members is sufficient'"); *Olden v. LaFarge Corp.,* 203 F.R.D. 254, 269 (E.D. Mich. 2004), *aff'd,* 383 F.3d 495 (6th Cir. 2004) (stating that when "the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied") (internal citation omitted); *Lichoff v. CSX Transp., Inc.,* 218 F.R.D. 564, 570 (N.D. Ohio 2003) (finding that plaintiffs are required to "present more than speculation, but plaintiffs do not have to 'establish class size with precision'").

-13-

Case No. 1:08-cv-605
Gwin, J.

impracticable." Fed. R. Civ. P. 23(a)(1).

### II.A.2. Commonality

The plaintiff must also show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A class representative must "be part of the class and 'possess the same interest and suffer the same injury' as the class members." Falcon, 457 U.S. at 156 (internal citation omitted). In this regard, there must be at least one question of law or fact common to the class. Sprague, 133 F.3d at 397. The common question of law or fact must be a "common issue the resolution of which will advance the litigation." Sprague, 133 F.3d at 397.

The Plaintiffs' class share common questions of law or fact that will advance the litigation. Specifically, the legal import of Nationwide's communications that simultaneously offer a settlement and terminate rental benefits is a common questions of law that will advance the litigation.

### II.A.3. Typicality

Under Rule 23(a)'s typicality requirement, a plaintiff seeking class certification must show that his or her claims are typical of other potential class members' claims. FED. R. CIV. P. 23(a). The Sixth Circuit has held that "[t]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." Sprague, 133 F.3d at 399. The court summarized this legal standard simply: "as goes the claim of the named plaintiff, so go the claims of the class." Id.

A representative party's claims, however, need not be identical to those of the potential class members. See Senter, 532 F.2d at 524; In re Telectronics Pacing Systems, Inc., 164 F.R.D. 222, 228 (S.D. Ohio 1995) ("A plaintiff's claim is typical if it arises from the same event or practice or course

-14-

Case No. 1:08-cv-605
Gwin, J.

of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory . . . The typicality requirement may be satisfied even if there are factual distinctions between the class members and those of other class members.").

The Plaintiffs say that the breach occurred when Nationwide communicated a termination of car rental benefits before the Plaintiffs had agreed to Nationwide's settlement offer. The claims of the putative representative Plaintiffs are typical of the defined class.

The testimony of Deponent Coats adequately demonstrates that Nationwide's communications and conduct toward the named Plaintiffs was consistent with Nationwide's promulgated national policies. Nationwide had a national policy of limiting car rental benefits to three days. [Doc. 87-8, Ex. 7 at 44.] Nationwide directed employees to follow up the initial rental communication with a standard form letter. [Doc. 87-8, Ex. 1 at 5.] The standard form letter "confirms" the settlement offer and says that "[p]ayment for [the] rental car will end on [_____]." [Doc. 87-8, Ex. 4 at 9.]

The Defendant says that the Plaintiffs' claims are not typical because Nationwide did not issue to any of the named Plaintiffs' an endorsement with the unconditional 30 day language. Rather, all of the putative Representative Plaintiffs received the conditional 30 day language. [Doc. 90-1 at 12-13.] Additionally, the Defendant says that even the similar conditional endorsements contain different language on when the 30 day rental period starts. [Doc. 90-1 at 12-13.]

These differences are minor compared to the similarities of the putative representative Plaintiffs' claims and the claims of the class. This Court does not find any problems associated with either of these minor differences. Nationwide's conduct was the same, regardless of the endorsements. The only effect the differences may have is on the measure of damages of the class

-15-

Case No. 1:08-cv-605
Gwin, J.

members.  If these differences later appear significant, this Court has authority to divide the above

defined class into subclasses.  *See* FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class

certification may be altered or amended before final judgment."); FED. R. CIV. P. 23(c)(5) ("When

appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

>      *II.A.4.  Adequacy of Representation*

A plaintiff seeking to represent the class must also show that he or she will "fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). This requirement is "essential

to due process, because a final judgment in a class action is binding on all class members." *Amer.*

*Med. Sys., Inc.,* 75 F.3d at 1083.  Adequacy of class representation is initially measured by two

standards.  First, class counsel must be qualified, experienced and generally able to conduct the

litigation.  Second, class members must not have interests that are antagonistic to one another.  *Id.*

Interests are antagonistic when there is evidence that the representative plaintiff appears unable to

"vigorously prosecute the interests of the class." *Id.  See also Alexander Grant & Co. v. McAlister,*

116 F.R.D 583, 588-89 (S.D. Ohio 1987) (explaining that the three-pronged Rule 23(a)(4) test asks:

"is the representative a class member, does the representative have a stake in the outcome, and is the

representative familiar with the facts and conditions to be challenged on behalf of the class?").

The Defendant "admits that Plaintiffs' counsel is qualified to represent the putative class."

[Doc. 90-1 at 17.] The Defendants contend, however, that the putative representative Plaintiffs are

not "part of the class" and do not "possess the same interest and suffer the same injury as the class

members."  This argument speaks more to typicality and was addressed above.

The Defendant has not identified any sufficient conflicting interests between the putative

representative Plaintiffs and the absent class members.  The putative class Counsel and representative

Case No. 1:08-cv-605
Gwin, J.

Plaintiffs  are adequate under Rule 23.

*II.B.     Rule 23(b)(3) Requirements*

A district court can certify a class under Rule 23(b)(3) if the plaintiff has satisfied the Rule

23(a) prerequisites and

> (3) the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a class
> action is superior to other available methods for fairly and efficiently adjudicating the
> controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the
>> prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy
>> already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of
>> the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).  The Rule 23(b)(3) requirements seek to ensure that the putative class claim

is "sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.

Here, we find that the putative class members would have little interest in individually

controlling the litigation.  The claims presented here are the type of small claims that are generally

best treated under the class action procedure.  The Advisory Committee Note accompanying the 1966

amendment to Rule 23 says that Rule 23(b)(3) was designed to facilitate claims similar to the

Plaintiffs' claims: Rule 23(b)(3) "encompasses those cases in which a class action would achieve

economies of time, effort, and expense."  Rule 23(b)(3) "was expected to be particularly helpful in

enabling numerous persons who have small claims that might not be worth litigation in individual

actions to combine their resources and bring an action to vindicate their collective rights."  7AA

-17-

Case No. 1:08-cv-605
Gwin, J.

WRIGHT & MILLER § 1777.

The Defendants have not identified any other litigation that is pending with similar claims and have not argued that this is an undesirable forum for this litigation.

The Plaintiffs' proposed a class that included all those Nationwide policyholders that had the conditional or unconditional 30 days language but had not received a full 30 days of covered expenses. As the Defendant suggested, this included those policyholders that had voluntarily settled their claims with Nationwide that did not receive any communication that violated the policy language. This argument suggests that the Plaintiffs' proposed class fails on the predominance and suitability requirements in rule 23(b)(3). Because of this argument, this Court has narrowed the Plaintiffs' proposed class.

The Defendants also suggest that the proposed class will require the Court "reconstruct telephone conversations" to determine if Nationwide in fact breached the applicable endorsement language. [Doc. 90-1 at 16.] If believed, the common experiences of Plaintiffs Prosser, Quade, and Carbon, however, suggest that the Defendants had a policy of communicating a settlement offer while simultaneously informing an insured that Nationwide was terminating their car rental benefits before the expiration of the promised 30 days. These common experiences, combined with the above-outlined national policies on settlement are sufficient to justify the certification of a class that includes those individuals that received an allegedly breaching communication over the telephone, and those individuals like Van Horn that received a letter with the allegedly breaching communication. Nationwide will be able to dispute the existence or extent of this policy at trial.

The Defendant also says that the Plaintiffs have failed to state an adequate measure of damages applicable to the class. The Sixth Circuit has "never required a precise mathematical

-18-

Case No. 1:08-cv-605
Gwin, J.

calculation of damages before deeming a class worthy of certification." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 535 (6th Cir. 2008) (citing *Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004)).  In *Olden*, the Sixth Circuit affirmed certification of a class where "individual *damage* determinations might be necessary" because "the plaintiffs . . . raised common allegations which would likely allow the court to determine liability . . . for the class as a whole." *Olden*, 383 F.3d at 509.  Similarly, this Court holds that, while individual determinations of damages may be required, the Plaintiffs' narrowed class will allow this Court to adjudicate liability efficiently on a class-wide basis.

## III.  Conclusion

For reasons stated above, this Court **GRANTS** the Plaintiff's motion for class certification with the class defined as:

> All individuals and entities who: (i) had an automobile policy with one of the Named Defendants that contained a rental reimbursement endorsement that had no early termination provision or only could be terminated early when "a total settlement is agreed to"; (ii) experienced a total loss and rented a car; and (iii) before agreeing to a settlement offer from Nationwide, received a communication from Nationwide that (1) offered a settlement, and (2) set a date on which Nationwide would terminate car rental benefits that was (a) before the expiration of the endorsement defined 30 days that was (b) not conditioned on reaching a settlement before termination.

This Court appoints the named Plaintiffs as class representatives.  After considering the relevant factors found in Fed. R. Civ. P. 23(g)(1)(C), this Court appoints Kabateck Brown Kellner LLP, Feazell & Tighe, LLP, and Kisling, Nestico & Redick LLC as class counsel.

-19-

Case No. 1:08-cv-605
Gwin, J.

Additionally, this Court orders the Plaintiff to provide the "best notice practicable" of this pending litigation to the class members.  Fed. R. Civ. P. 23(c)(2).

IT IS SO ORDERED.


Dated: February 10, 2008                    s/        James S. Gwin
                                            JAMES S. GWIN
                                            UNITED   STATES   DISTRICT   JUDGE