UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                      :
SHANNON VAN HORN, *et al.*            :
                                      :    CASE NO. 1:08-cv-605
         Plaintiffs,                  :
                                      :
vs.                                   :    OPINION & ORDER
                                      :    [Resolving Docs. Nos. 91-1, 91-2, 96, 100.]
NATIONWIDE PROPERTY AND               :
CASUALTY INSURANCE                    :
COMPANY, *et al.*                     :
                                      :
         Defendants.                  :
                                      :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    The Defendants Nationwide Property and Casualty Insurance Company, Nationwide

Insurance Company of America, Nationwide Mutual Fire Insurance Company, Nationwide Mutual

Insurance Company, DOES 1 through 250, inclusive (collectively "Nationwide" or "Defendants")

move this Court for summary judgment. [Doc. 91-1, 91-2; Doc. 100.] Plaintiffs Van Horn, Prosser,

Quade, and Carbon, as class representatives, oppose.  [Doc. 96.]

    In resolving this motion, this Court must decide (1) whether Ohio recognizes a claim for

breach of an insurance contract on an anticipatory repudiation theory.  An anticipatory repudiation

is a "clear and unequivocal" "repudiation of the promisor's contractual duty before the time fixed for

performance has arrived."  *McDonald v. Bedford Datsun*, 570 N.E.2d 299, (Ohio App. 1989).  If

Ohio recognizes this claim, this Court must then decide (2) whether the Defendants' alleged

repudiation was sufficiently "clear and unequivocal," *id.*, to constitute a breach.

Case No. 1:08-cv-605
Gwin, J.

This Court holds that (1) Ohio courts would recognize an anticipatory repudiation claim in an insurance contract claim.  Additionally, this Court holds that (2) here, whether Defendants' repudiation rose to the level of a breach is a question for the jury.  Accordingly, this Court **DENIES** Defendants' motion for summary judgment.

## I.  Summary Judgment Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party, however, is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies this burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586.  Nor can the nonmoving party "rely

-2-

Case No. 1:08-cv-605
Gwin, J.

merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); see also *Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

## II. Background Facts and Procedure

The Plaintiffs' claims generally arise when an individual holding an insurance policy with the Defendants has an auto accident that renders their vehicle inoperable. *See* [Doc. 81 at 6.]  If the Defendants are satisfied that the cost to repair the vehicle is greater than the value of the vehicle, they will characterize the vehicle as a total loss.  *See* [Doc. 81 at 6.] In its insurance policies, Defendants generally promise to cover the expenses for renting a car until the insured agrees to a settlement or, in the absence of a settlement, for 30 days. [Doc. 81 at 6; Doc. 87-10, Ex. 26 at 13.]

On March 11, 2008, the Plaintiffs filed their fist complaint, saying that Defendants failed to provide the promised car-rental benefits. [Doc. 1-1.]  The Plaintiffs say Defendants have a national practice of breaching their insurance contracts by simultaneously communicating (1) an offer for settlement and (2) a termination of car rental benefits, not conditioned on settlement, before the

Case No. 1:08-cv-605
Gwin, J.

expiration of the promised 30 days benefits.  [Doc. 92 at 7 ("It is Plaintiffs' contention that

Nationwide breached its insurance contract when it prematurely terminated policyholders' car rental

benefits by informing policyholder' *at the time that it makes a total settlement **offer*** that it will stop

paying for the policyholders' rental vehicle on a specific date and/or directing policyholder to return

the rental vehicle by a specific date (*i.e.*, informing the policyholder of that a termination date has

been set.") (emphasis in original).]

On February 10, 2009, this Court certified the Plaintiffs' claims as a class action consisting

of:

> All individuals and entities who: (i) had an automobile policy with one of the Named
> Defendants that contained a rental reimbursement endorsement that had no early
> termination provision or only could be terminated early when "a total settlement is
> agreed to"; (ii) experienced a total loss and rented a car; and (iii) before agreeing to
> a settlement offer from Nationwide, received a communication from Nationwide that
> (1) offered a settlement, and (2) set a date on which Nationwide would terminate car
> rental benefits that was (a) before the expiration of the endorsement defined 30 days
> that was (b) not conditioned on reaching a settlement before termination.

[Doc. 111 at 19.]

For the purposes of the class certification, this Court did not examine the merits of the

Plaintiffs' claims.  Now, however, at the summary judgment stage, this Court must decide whether

the Plaintiffs' anticipatory repudiation theory has merit.  To test the merits of the claim, this Court

will first describe in detail the policy language applicable to the class and the settlement process that

the Plaintiffs complain of.

### II.A.1.  Policy Language

In discovery for this pending litigation, Defendants have provided the Plaintiffs with copies

of their policy endorsements governing car-rental benefits. [Doc. 87-10, Ex. 21 at 2.] Defendants

-4-

Case No. 1:08-cv-605
Gwin, J.

have provided several different endorsements that the Plaintiffs have classified into three types. [Doc. 87-10, Ex. 21 at 2.] The divisions are based on the language used in the endorsements. The class action involves only two of those types.

Endorsement 3022 is representative of type 1. The Defendant Nationwide had issued Endorsement 3022 to Plaintiffs Van Horn, Carbon, and Quade. Under Endoresement 3022, when an insured had a total loss, Nationwide promised to cover the insured's car rental expenses for "a) for 30 consecutive days; or b) until your auto is repaired; or c) until a total settlement is agreed to; whichever comes first." [Doc. 87-10, Ex. 26 at 13.] The 30 day period of covered car rental expenses "begins when [the] auto cannot run due to a covered loss; or if [the] auto can run, when left at a shop for agreed repairs." [Doc. 87-10, Ex. 26 at 13.] The type 1 endorsements all involve this same conditional 30 day language. Type 1 endorsements will be referred to below as "settlement-conditioned 30 day endorsements."

Endorsement 3169 is a type 1 conditional 30 day endorsement, but has different terms that govern when the 30 day period begins. The Defendant Nationwide issued Endorsement 3169 to Plaintiff Prosser. Under Endorsement 3169, when an insured had a total loss, Nationwide promised to pay car rental expenses "a) for 30 consecutive days; or b) until your auto is repaired; or c) until a total settlement is agreed to; whichever comes first." [Doc. 87-10, Ex. 27 at 15.] Here, the 30 day period of covered car rental expenses "begins when [the] auto is withdrawn from use for more than 24 hours due to a covered loss; or if your auto can run, when left at a shop for agreed repairs." [Doc. 87-10, Ex. 27 at 15.]

Endorsement 1955 represents type 2. Nationwide did not issue the type 2 endorsements to any of the named Plaintiffs. This Endorsement 1955 provides 30 days of car rental expense coverage

-5-

Case No. 1:08-cv-605
Gwin, J.

without limitation: "[coverage] begins when [the] described auto cannot run due to a covered loss; or, if the auto can run, when you leave it at the shop for agreed repairs. It continues for 30 consecutive days." [Doc. 87-10, Ex. 30 at 21.][1/] Type 2 endorsements all contain the unconditional 30 day language. Type 2 endorsements will be referred to below as "unconditional 30 day endorsements."

### II.A.2. The Settlement Process for the Four Named Plaintiffs

The policy language in the conditional 30 day endorsements above allows Nationwide to stop covering rental car expenses when Defendants and the insured agree to a total settlement. The Plaintiffs say that the breach occurs when the Defendants say they will terminate car-rental benefits before the promise 30 days when the insured has not yet agreed to a settlement. The Plaintiffs' say that this communication is an anticipatory repudiation and breaches the insurance contract. To demonstrate the factual context in which the Plaintiffs claims arise, this Court will briefly describe what the Defendants said to the Representative Plaintiffs.

After telling Van Horn that her vehicle was a total loss, Defendants communicated a settlement offer to Van Horn. [Van Horn Depo., Doc. 105-2 at 26-27.] Before the promised 30 days of car rental benefits had expired, and before she had agreed to a settlement, Defendants told her that she "had four days . . . to return the rental." [Van Horn Depo., Doc. 105-2 at 36.] Van Horn also said that, before she agreed to a settlement, Defendants sent a letter confirming their offer and saying that "[p]ayment for your rental car will end on June 6, 2008," which was before the expiration of the 30 days. [Van Horn Depo., Doc. 105-2 at 36-37.] Responding, the Defendants say there is a factual

---

[1/] The Plaintiffs attached several other endorsements in use that contain the same conditional 30 day language as employed in Endorsement 3022. [Doc. 87-10, Exs. 22-29.] The Plaintiffs additionally provide several other endorsements that contain the unconditional 30 day language as Endorsement 3169. [Doc. 87-10, Exs. 30-37.]

Case No. 1:08-cv-605
Gwin, J.

dispute regarding this and that their representative "did not set a final date for termination of rental benefits until the total loss settlement offer was accepted." [Goodwin Aff., Doc. 91-9, Ex. G at 2.]

After telling Prosser that her vehicle was a total loss, Defendants then offered her a settlement. [Prosser Depo., Doc. 105-4 at 64-65.] Prosser says that the Defendants' representative called the offer "non-negotiable," and told her that she "needed to return [her] rent-a-car the next day." [Prosser Depo., Doc. 105-4 at 64-65.] Defendants, however, say that their representative never called the offer non-negotiable, and that the representative "did not set a final date for termination of rental benefits until the total loss settlement offer was accepted." [Swancer Aff., Doc. 91-13, Ex. K at 1-2.]

Quade says that Defendants told her that her vehicle was a total loss and then "gave [her] a settlement amount, [and] told [her] to return the vehicle." [Quade Depo, Doc. 105-6 at 31.] Defendants told Quade that she had to return the rental car within "around three days." [Quade Depo., Doc. 105-6 at 33.] Defendants say, however, that their representative "never set a final date for termination of rental benefits until the total loss settlement offer was accepted." [Maser Aff., Doc. 91-14, Ex. L at 13-14.]

Carbon says that Defendants told her that her vehicle was a total loss and gave her a settlement offer. [Carbon Depo., Doc. 108-8 at 32.] According to Carbon, the Defendants then told her that her "rental was extended until [5 days later]." [Carbon Depo., Doc. 108-8 at 32, 90.] Defendants, however, again say that their representative "would not have set a final date for termination of rental benefits until the total loss settlement offer was accepted." [Winkler Aff., Doc. 91-15, Ex. M. at 2.]

In certifying the Plaintiffs' case as a class action, this Court held that these communications, combined with Defendants' national practices on settlement of total loss claims, suggested that the

Case No. 1:08-cv-605
Gwin, J.

Defendants had a national policy of simultaneously communicating a settlement offer and a date on which car rental benefits would terminate that was before the promised 30 days. [*See* Doc. 111 at 18.]


The common elements of these communications from a representative of the Defendants to the insured are, (1) before the insured has agreed to a settlement offer, (2) the representative states a date on which car-rental benefits will cease before the promised 30 days.  Below, this Court will examine whether Ohio law recognizes a claim for breach of an insurance contract on an anticipatory repudiation theory and then will analyze whether the above-described class of communications sufficiently meets the test for anticipatory repudiation to survive the Defendants' motion for summary judgment.

## III.  Analysis

In moving for summary judgment, the Defendants say that Ohio law[2] does not a cause of action for breach of contract on an anticipatory repudiation theory on the insurance contracts at issue here. [Doc. 100 at 2 ("[I]t is well established that the 'doctrine of anticipatory repudiation [of contracts] does not apply to executory contracts for the payment of money only.') (citing *Burke v. Athens*, 703 N.E.2d 804, 807 (Ohio App. 1997)) (alteration in original).] In the alternative, the Defendants say that the factual record does not support a finding that their communications rose to the level of an anticipatory repudiation. [Doc. 100 at 3.]

---

[2] A federal court sitting in diversity applies the substantive law of the forum state where it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  The rule requiring the application of state substantive law requires a federal court to apply state conflict-of-laws analysis. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  The parties have not suggested any reason, despite this being a national class action, for the application of another forum state's laws.  Under Ohio conflict-of-laws principles, "the party asserting the application of the foreign law has the initial burden to demonstrate . . . a conflict." *Cross v. Carnes*, 724 N.E.2d 828, 836 (Ohio App. 1998) (citations omitted).

Case No. 1:08-cv-605
Gwin, J.

*III.A.   Application of Anticipatory Repudiation to Unilateral Contracts*

With their motion for summary judgment, the Defendants say that the Plaintiffs' claims fail because the "'doctrine of anticipatory repudiation [of contracts] does not apply to executory contracts for the payment of money only.'" [Doc. 100 at 2 (quoting *Burke v. Athens*, 703 N.E.2d 804, 807 (Ohio App. 1997)).]   The Defendants say the *Burke* holding applies here because the Plaintiffs' claims are for "breach[ of] contractual provisions pertaining to the payment of money." [Doc. 100 at 2.]

Courts applying Ohio law, however, have only applied the holding in *Burke* to a narrow class of contracts.   *See Burke*, 703 N.E.2d at 805, 807 (holding anticipatory repudiation inapplicable to a "secured discount note"); *Crouse v. Nantucket Village Development Co.*, 460 N.E.2d 1389, 1391 (Ohio App. 1983) (noting anticipatory repudiation is inapplicable to negotiable instruments and mortgages); *compare Federal Life Ins. Co. v. Rascoe*, 12 F.2d 693, 695 (6th Cir. 1926) (reversed on other grounds) (applying Tennessee law) (holding that an insurance contract that required the insured to submit records to insurance company every 30 days was not "a unilateral contract for the unconditional payment of money, such as a bond or a promissory note").

The only Ohio authorities that limit the application of anticipatory repudiation involve contracts for commercial paper or mortgages–those contracts "for the payment of money only," *Burke*, 703 N.E.2d at 807.   The insurance contracts here are not executory contracts like those discussed in *Burke* and *Crouse*.   Recently, the Sixth Circuit has also noted that "courts have frequently recognized anticipatory repudiation in insurance coverage disputes . . . ." *Combs v. International Ins. Co.*, 354 F.3d 568, 600 (6th Cir. 2004) (collecting cases).[3]

---

[3] In *Combs*, the Sixth Circuit, applying Kentucky law, noted that "[i]nsurance policies are generally unilateral
(continued...)

Case No. 1:08-cv-605
Gwin, J.

The Restatement (Second) of Contracts also supports the applicability of the doctrine of anticipatory repudiation to the contracts at issue here. Formerly, the Restatement (First) of Contracts had distinguished unilateral and bilateral contracts, Restatement (First) of Contracts § 12, and limited the application of anticipatory repudiation to bilateral contracts where the promisee had not fully performed, *id.* at § 318. The Restatement (Second) of Contracts rejected the distinction between bilateral and unilateral contracts, Restatement (Second) of Contracts § 1 reporter's note to cmt. f (noting that the distinction between bilateral and unilateral contracts "has not been carried forward because of doubt as to the utility of the distinction"), and has broadened the applicability of anticipatory repudiation, *id.* at §§ 250, 243.

This Court holds that the Plaintiffs' claims for anticipatory repudiation are cognizable under Ohio law.

*III.B.  Whether Defendants' Communications Rise to the Level of an Anticipatory Repudiation*

Under Ohio law, "[a]n anticipatory breach of contract by a promisor is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived." *McDonald v.*

---

³/(...continued)

contracts." *Combs*, 354 F.3d at 599. That court also noted the disagreement in authorities as to whether anticipatory repudiation applies to unilateral contracts. *Id.* There, the court said that "there is ample authority for the proposition that the promising party can anticipatorily repudiate a unilateral contract," *id.* at 600 (citing *Dingley v. Oler*, 117 U.S. 490, 502-504 (1886)), and reasoned that:

> To limit anticipatory repudiation to bilateral contracts makes little sense. The theory, presumably, is that if the first party has already performed when the second party announces his intention to breach, the first party (the injured party) has nothing to gain through an immediate action for damages based on anticipatory breach. Yet "[t]he harm caused to the plaintiff is equally great [whether or not he has already performed]; and it seems strange to deny to a plaintiff a remedy [for anticipatory breach] merely on the ground that he has already fully performed as his contract required."

Id. at 600 (citing 9 Arthur L. Corbin, CORBIN ON CONTRACTS § 962, at 767 (interim ed.1979)). Even if insurance contracts are like those executory contracts described in *Burke* and *Cruse*, the recent *Combs* decision supports a holding that anticipatory repudiation is applicable to the insurance policies at issue here.

-10-

Case No. 1:08-cv-605
Gwin, J.

*Bedford Datsun*, 570 N.E.2d 299, 301 (Ohio App. 1989); *see also* 18 OHIO JUR. 3D CONTRACTS §

232.  "The repudiation must be expressed in clear and unequivocal terms."  *McDonald*, 570 N.E.2d

at 301.

　　　　But whether a communication constitutes anticipatory repudiation is often a fact-intensive

inquiry.  *See American Senior Development, L.L.C. v. Parkside of Collierville, L.L.C.*, 102 Fed.

Appx. 890, 896 (6th Cir. 2004) (quoting *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn. App. 1991))

("'Whether the words and/or actions of the contracting party have risen to the level of repudiation

is normally a question of fact to be determined by the trial court.'");  *Farmers Commission Co. v.*

*Burks*, 719 N.E.2d 980, 990 (Ohio App. 1998) ("Whether a party has repudiated a contract or merely

expressed doubt as to willingness to perform is a question of fact.").  A repudiating party can retract

the repudiation until "'the promisee has materially changed his position in reliance on the

repudiation.'"  *Gilmore v. American Gas Machine Co.* 129 N.E.2d 93, 95-96 (quoting CORBIN ON

CONTRACTS § 980).

　　　　Here, the Plaintiffs show evidence that the Defendants communicated to the Plaintiffs an offer

of settlement and told the Plaintiffs that their car-rental benefits would end before the contractually

promised time.  The Defendants say that their communication did not "set a final date for termination

of rental benefits."  The Plaintiffs, however, say that the Defendants' statements on car-rental benefits

were sufficiently clear and unequivocal to constitute a repudiation of the contract.  The import of the

Defendants' communication to the Plaintiffs is a question of fact for the jury to decide.

## IV.  Conclusion

　　　　Because Ohio law would recognizes a claim for anticipatory repudiation of an insurance

contract, and because a question of fact exists as to whether the Defendants' communication

Case No. 1:08-cv-605
Gwin, J.

constituted a repudiation, this Court **DENIES** the Defendants' motion for summary judgment.

IT IS SO ORDERED.


Dated: February 24, 2009                    s/          *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED   STATES   DISTRICT   JUDGE