UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                             :
SHANNON VAN HORN, *et al.*                   :
                                             :   CASE NO. 1:08-cv-605
            Plaintiffs,                      :
                                             :
vs.                                          :   OPINION & ORDER
                                             :   [Resolving Doc. No. 136-1, 142]
NATIONWIDE PROPERTY AND                      :
CASUALTY INSURANCE                           :
COMPANY, *et al.*                            :
                                             :
            Defendants.                      :
                                             :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On March 23, 2009, Defendants moved this Court to amend their Answer to include the issues of assignment, indemnification, and failure to tender back settlement proceeds.[1/] [Doc. 123-1.] Plaintiffs did not object to this amendment, but asked this Court for the opportunity to "test the validity of Defendants' new-found defenses through motions for summary judgment." [Doc. 126.] This Court granted the Defendants' motion to amend and granted Plaintiffs' request for summary judgment briefing. [Docs. 127, 128.]

The Plaintiffs move for partial summary judgment saying that the written settlement agreements that class members signed do not bar their current action alleging a breach of

---

[1/] Defendants contend that the tender-back rule "is not in the nature of an affirmative defense for which the defendant bears the burden of proof." [Doc. 123-1 at 6.] To resolve this motion, however, this Court need not decide whether the tender-back rule is an affirmative defense, *see* FED. R. CIV. P. 8(c), or a condition precedent, *see* FED. R. CIV. P. 9(c). To avoid confusion this Court will refer to the tender-back rule as an issue, rather than an affirmative defense.

Case No. 1:08-cv-605
Gwin, J.

contractually promised rental-car benefits. [Doc. 136-1.] Responding, Defendants (1) ask this Court to strike the filing saying that the motion goes beyond the scope of this Court's leave, and, (2) say that (a) the settlement agreements cover rental-car benefits and bar this suit, or (b) the scope of the settlement agreements is a factual issue that must be presented to a jury. [Docs. 142, 152-1.]

In resolving the motion for summary judgment, this Court must decide (1) whether the settlement agreements unambiguously exclude rental-car benefits, and (2) if the settlement agreements are ambiguous, this Court must decide whether there are any issues of material fact on the coverage of the releases.

Because the settlement agreements do not cover the rental-car benefits, the agreements do not bar Plaintiffs' breach of contract claim. Any defense or issue that Defendants derive from the written settlement agreements is insufficient to bar Plaintiffs' claims.[2/] Accordingly this Court **GRANTS** Plaintiffs' motion for partial summary judgment. [Doc. 136-1.]

### I. Motion to Strike

Before addressing the substance of the Plaintiffs' motion for summary judgment, this Court will resolve Defendants' motion to strike Plaintiffs' filing. [Doc. 142.] Defendants say that this Court should strike the filing because (1) the filing "is only a memorandum and does not contain the requisite motion for summary judgment as contemplated by Federal Rule 56, L.R. 7.1," (2) the filing covers matters beyond the scope of this Court's previously granted leave, and (3) the filing is untimely. [Doc. 142 (emphasis removed).] The Court **DENIES** Defendants' motion to strike.

First, Defendants are correct that Local Rule 7.1 requires that the "moving party . . . serve

---

[2/] Defendants have separately moved this Court to modify the class definition to only include those claims that arise after November 13, 2002. [Doc. 135-1 at 9.] Defendants say that claims that arise before that date are barred by a settlement agreement in a previous class action. This Court will resolve that motion when it is ripe.

-2-

Case No. 1:08-cv-605
Gwin, J.

and file with its motion a memorandum," and that Plaintiffs did not file a motion and a separate memorandum. Defendants, however, have not identified any prejudice they have suffered and striking the memorandum is not an appropriate remedy.

Second, the Plaintiffs' arguments in its motion for partial summary judgment are within the scope of this Court's previously granted leave. In ruling on Defendants' motion for reconsideration, this Court referred to the issues of accord and satisfaction, release, the tender-back rule, indemnity, and assignment as "new." [Doc. 122 at 7 n.2 ("The [issues] are new in the sense that none were briefed at summary judgment stage and some were not even plead[ed].").] In granting Plaintiffs' leave to file for partial summary judgment, this Court first noted the Plaintiffs' request "to test the validity of defendants' new-found defenses through a motion for summary judgment," and then granted leave. [Doc. 128.] Plaintiffs' say that these issues do not bar their claims because the issues all derive from the written settlement agreements. In their brief, Plaintiffs test the validity of these issues by challenging the applicability of the settlement agreements. This filing is within the scope of this Court's Order granting leave.

Third, Plaintiffs' motion is timely. In its scheduling order, this Court initially required the parties to file dispositive motions by October 18, 2008. [Doc. 73.] Rule 16(b)(4) notes that "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Good cause to modify the scheduling order exists because the Defendants had not focused in either class certification or summary judgment on any of the issues covered by Plaintiffs' new partial dispositive motion. This Court's determination of these legal issues will allow for a more efficiently run trial. The Plaintiffs' also have this Court's consent.

Accordingly, Defendants' motion to strike is **DENIED**. This Court will now address the

Case No. 1:08-cv-605
Gwin, J.

substance of Plaintiffs motion for partial summary judgment.

## II. Summary Judgment Standard of Adjudication

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown,* 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party, however, is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies this burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561,

-4-

Case No. 1:08-cv-605
Gwin, J.

563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); see also *Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Background Procedure and Facts

In previous Orders, this Court has discussed at length the facts underlying Plaintiffs' breach of contract claim. [Docs. 111, 116, 122.] To provide context for this motion, however, this Court will provide a brief summary of the Plaintiffs' claims and the procedure leading up to this motion. The Court will then describe in more detail the facts relevant to this motion.

*III.A. Plaintiffs' Claims*

Plaintiffs are a class of individuals that all had automobile insurance policies with Defendants and all experience damage to their vehicles. Under the policies, when the cost of repairs of an insured's vehicle exceeds the cost of replacement of the vehicle, Defendants' characterize the vehicle as a total loss. Each Plaintiff suffered damage to their vehicles that Defendants characterized as a total loss.

Under the endorsements applicable to the class of Plaintiffs, when an insured suffered a total loss, Defendants promised to provide rental-car benefits. These benefits were to last for a maximum of 30 days, but at least until the Defendants and the insured had reached a settlement agreement on

Case No. 1:08-cv-605
Gwin, J.

the total loss. Plaintiffs allege that Defendants had a policy and practice of terminating the rental-car benefits before the contractually promised time.

Specifically, Plaintiffs say that Defendants, before reaching a settlement for the total loss claim, unequivocally told insureds that rental-car benefits would end at a time before the contractually promised 30 days. Plaintiffs say that Defendants did not condition this termination of rental-car benefits on any settlement. According to Plaintiffs, in this communication, Defendants anticipatorily repudiated their insurance contracts. Plaintiffs are seeking damages for this allegedly breaching communication.

Pertinent to this motion, Defendants assert that settlement agreements stop Plaintiffs' claims. These settlement agreements contain language on accord and satisfaction, release, indemnity, and assignment. Defendants say the settlement agreements bar Plaintiffs' claim for rental-car benefits. [Doc. 119-1.] According to Defendants, the settlement agreements include claims for rental-car benefits. If the settlement agreements were broad enough to include rental coverage claims, Defendant says Ohio law requires Plaintiffs to tender back the consideration from the agreements before brining this suit. Defendants, however, did not rely on these settlement agreements when they earlier moved for summary judgment or in opposing class certification. Because Plaintiffs did not have an opportunity to test the legal sufficiency of these late-argued issues, this Court granted Plaintiffs leave to file for partial summary judgment.

In moving for partial summary judgment, Plaintiffs say that the settlements that class members reached with Defendants do not cover the rental-car benefits and does not stop their filing these claims.

*III.B. The Settlement Agreements*

-6-

Case No. 1:08-cv-605
Gwin, J.

After the Plaintiffs had received the allegedly breaching communication, they all eventually settled their total property loss claims. Plaintiffs signed settlement agreements[3/] with Defendants that said: "the undersigned agrees to indemnify and forever hold harmless the Company from all claims whatsoever kind or nature arising out of the loss to their vehicle on the above mentioned date." [Doc. 123-2, Ex. A at 2.] The form continues: "The agreed settlement is: Actual Cash Value: $_____, Sales Tax $_____, Total $_____." [Doc. 123-2, Ex. A at 2.] Named Plaintiff Van Horn's policy language stated that, "[t]o determine actual cash value, [Defendants] will consider: 1. fair market value; 2. age; and 3. condition of the property." [Doc. 152-12, Ex. K at 14.]

Further, the form says, "This settlement includes: ( ) Towing ( ) Storage ( ) No Towing or Storage ( ) Other:." When the settlement included any of these categories, an "X" was placed inside the parentheses. [*See* Doc. 123-2, Ex. A at 2.] The policy endorsement that describes the rental-car benefits also explicitly stated that settlement of the total loss claim terminates the rental-car benefits. [Doc. 87-10, Ex. 26 at 13.]

The parties have also submitted evidence on the settlement process that provides context to the settlement agreements. Defendants' instructions to employees on settlement negotiation focus almost exclusively on the value of the total-loss vehicle. [Doc. 87-8, Ex. 4 at 7.] The instructions direct the employee to confirm the condition of the vehicle, but not to say "we are offering you $ . . . ." *Id.* Instead, the employee is to say "[t]he market value of your vehicle is $ . . . ." *Id.* In describing this settlement process, Deponent Coats, Nationwide's Material Damage Technical

---

[3/] Two of the named Plaintiffs, Plaintiffs Carbon and Van Horn, do not appear to have signed the settlement agreements. [Doc. 152-1 at 6-7.] Plaintiffs' motion for partial summary judgment only covers written settlement agreements like those signed by named Plaintiffs Quade and Prosser. In this motion, this Court resolves whether these written settlement agreements bar any of the class members' claims.

Case No. 1:08-cv-605
Gwin, J.

Director, said that,

> The only thing I can gather from that is if you present the offer by saying we are offering you, the customer will assume the vehicle value is negotiable, to let the customer know that we've done our homework on the value of the vehicle, and this is the market value of the vehicle, and this is what it is worth.

[Doc. 104-2 at 111-12.]

Additionally, in a form letter Defendants sent to insureds, at least until 2005, Defendants promised to provide "a settlement offer . . . based on the actual cost value of your total loss vehicle." [Doc. 104-2 at 121-24.]

### IV. Scope of the Settlement Agreements

To resolve the Plaintiffs' motion for partial summary judgment, this Court will first describe the arguments of the parties and then outline the principles governing the interpretation of the settlement agreements.

*IV.A. Arguments of the Parties*

In moving for partial summary judgment, Plaintiffs ask this Court to "dismiss[] the affirmative defenses of accord and satisfaction and payment, release, settlement, assignment, indemnification, and failure to tender settlement proceeds." [Doc. 136-1 at 17.] Plaintiffs say they are entitled to partial summary judgment because (1) the terms of the settlement agreements unambiguously do not cover rental-car benefits, and (2) even if the agreements are ambiguous, the evidence on the settlement process shows that the settlement agreements do not apply to rental-car benefits.[4/] If the agreements do not apply to rental-car benefits, according to Plaintiffs, then Defendants cannot assert the

---

[4/] Plaintiffs also say that, even if the settlement agreements purport to cover rental-car benefits, the settlement of the claim for rental-car benefits is not supported by additional consideration on top of the consideration that supports the settlement of the total-loss claim. [Doc. 136-1 at 12.] Because the settlement agreements do not cover rental-car benefits, this Court need not address this argument.

-8-

Case No. 1:08-cv-605
Gwin, J.

settlement agreements as a bar to Plaintiffs' claims.

Responding, Defendants say that the four corners of the settlement agreements unambiguously cover the rental-car benefits because the rental-car benefits "arise out of" the loss of the vehicle.[5/] [Doc. 152-1 at 11.] Defendants additionally argue that, even if this Court does not hold that the settlement agreements clearly apply to rental-car benefits, the settlement agreements are ambiguous in their coverage. [Doc. 152-1 at 13.] If the agreements are ambiguous, this creates an issue of fact, and "the jury is entitled to hear, weigh, and evaluate the evidence." [Doc. 152-1 at 17.]

To support their interpretation of the settlement agreements, Defendants have also pointed to extrinsic evidence: (1) named Plaintiff Carbon said, in deposition, that she thought the settlement payments from Nationwide would create a "done deal," [Doc. 105-8 at 62,] and (2) named Plaintiff Prosser said, in deposition, that she read the settlement agreement to say that she "c[ould]n't go back on the company," [Doc. 105-4 at 85.]

*IV.B. Principles Governing the Interpretation of Settlement Agreements*

"A release is a contract that is favored by law to encourage the private resolution of disputes." 15 OHIO JUR. 3d COMPROMISE, ACCORD, AND RELEASE § 48. Under Ohio law, "[a] release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim *encompassed within the release*." *Haller v. Borror Corp*, 552 N.E.2d 207, 210 (Ohio 1990) (emphasis added); 15 OHIO JUR. 3d COMPROMISE, ACCORD, AND RELEASE § 50. Additionally, "it is a well-recognized rule that a release that is so general that it includes within its terms claims of which the releasor was ignorant, and thus not within the contemplation of the parties when the release was executed, will not

---

[5/] Some of Defendants' brief focuses on issues not relevant to this current motion and will not be addressed here. [*See, e.g.*, Doc. 152-1 at 2-6 (arguing that Defendants' did not terminate rental-car benefits until the parties reached a settlement and that Defendants did not tell named Plaintiffs to return their rental cars until after a settlement).]

Case No. 1:08-cv-605
Gwin, J.

bar recovery of such claims." *Tanker v. Crest Equestrian Ctr.* 621 N.E.2d 589, 591 (Ohio App. 1993).

To determine whether a settlement agreement encompasses a particular cause of action, courts construe the agreement under the rules governing the construction of contracts generally. *Goldstein v. D.D.B. Needham Worldwide, Inc.* 740 F. Supp 461, 467 (S.D. Ohio 1990) (citing 15 OHIO JUR. 3d COMPROMISE, ACCORD, AND RELEASE § 48).

Interpretation of the contract begins with the language that the parties use. *Kelly v. Med. Life Ins. Co.*, 678 N.E.2d 519 (Ohio 1987). If the language of the contract is "clear and unambiguous, . . . interpretation is a matter of law." *Lewis v. Mathes*, 829 N.E.2d 318, 323 (Ohio App. 2005). A contract is ambiguous "if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably susceptible of more than one interpretation." *Id.* at 323-24 (citations omitted). If a court cannot resolve the parties' intent from the language of the contract, "the interpretation of the parties' intent constitutes a question of fact." *Id.* at 324 (citations omitted).

Under Ohio law, however, in certain circumstances, before a court resorts to extrinsic evidence to deduce the intent of the parties, courts will construe ambiguous contract language against one of the parties. *See, e.g.*, Mead *Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 798 (6th Cir. 2003). In *Mead Corp.*, the Sixth Circuit, in *de novo* review, examined the scope of an indemnity provision in a contract. *Id.* at 798. The Court held:

> Because the contract as a whole can be reasonably interpreted to support either [party's] position regarding the scope of the indemnity clause, we conclude that the contract is ambiguous as to this issue. Under Ohio law, "[a]mbiguous contractual language will be construed against the drafter of the contract." . . . [T]he ambiguity should be resolved in favor of [the nondrafting party].

*Id.* at 798-99 (citations omitted).

Case No. 1:08-cv-605
Gwin, J.

Additionally, under Ohio law, "[i]t is well settled that, '[w]here provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.'"[6] *Branham v. CIGNA HealthCare of Ohio, Inc.*, 692 N.E.2d 137, 139 (Ohio 1998); *see also* 18 OHIO JUR. 3d CONTRACTS § 131 (noting that in insurance contracts "[i]f a contract is ambiguous, the document will be construed strictly against the party who drafted it or selected its language").

*IV.B.1. Plain Meaning of the Settlement Agreement*

The contract here begins with language that suggests that the scope of the settlement agreement is expansive: "the undersigned agrees to . . . forever hold harmless the Company from all claims whatsoever kind or nature arising out of the loss of their vehicle . . . ."[7] (hereinafter, "arising-out-of language").

Defendants ask this Court to read the arising-out-of language broadly to include rental-car benefits. [Doc. 152-1 at 11.] Defendants say that, "[w]ithout the underlying vehicle loss or damage,

---

[6] Although the contract at issue here, the settlement agreement, is not technically an insurance contract, this Court finds that the principles governing construction of insurance contracts instructive.

[7] The document reads:

In consideration of the sum of $ [_____], Including applicable State Taxes, paid by the Company, the undersigned agrees to indemnify and forever hold harmless the Company from all claims whatsoever kind or nature arising out of the loss to their vehicle on the above mentioned date.

In consideration of such payment the undersigned hereby assigns and transfers to the said Company each and all claims and demands against any person, persons, firm or corporation arising from or connected with such loss or damage (and the said Company is subrogated in the place of and to the claims and demands of the undersigned against said person, persons, or property In the premises), to the extent of the amount above named. The undersigned further states that no monies have been paid to him/her by the party at fault and that he/she has executed no release of his/her claim against such party and that he/she will assist the Company In the prosecution of such claim and will execute any and alt papers necessary in effecting recovery.

[Doc. 136-2, Ex. A at 2.]

-11-

Case No. 1:08-cv-605
Gwin, J.

and the resulting . . . claim, rental benefits would never have been triggered . . . ." [Doc. 152-1 at 11.] Under this reading of the introductory language, however, vehicle towing and storage also "arise out of" the total loss to the vehicle. Without the underlying vehicle loss, there would be no towing or storage costs. The later specific provision on towing and storage undercuts Defendants' broad, literal interpretation of the arising-out-of language.[8/] As a principle of contract interpretation, "[w]hen the general terms of a contract conflict with special terms or provisions, the special provisions control." 18 OHIO JUR. 3d CONTRACTS § 129.

The towing and storage provision also has an "other" category. By including these two specific terms of towing and storage, and then including the general other category, the language suggests that the parties intended the settlement agreements to exclude other similar costs from the scope of the arising-out-of language unless specifically mentioned. Rental car costs, like the costs of towing and storage on a total-loss vehicle, similarly arise after a total loss. Under the principle of *ejusdem generis*, "when an enumeration of specific items in a contract is followed by some more general word or phrase, the general word or phrase is held to include only things of the same general nature as those specified." 18 OHIO JUR. 3d CONTRACTS § 126.

Even if both parties' interpretations of the contract were reasonable, this Court would construe the contract against Defendants as the drafter of the contract. Additionally, this contract, although not technically a contract for insurance, has the effect of limiting insurance coverage.

A review of the settlement agreements shows that the parties did not intend the settlement agreements to encompass rental-car benefits. Using these rules of interpretation, the settlement

---

[8/] The settlement agreement reads: But later, the contract says, "This settlement includes: ( ) Towing ( ) Storage ( ) No Towing or Storage ( ) Other:." When the settlement included any of the above categories, an "X" was placed inside of the parentheses. [*See* Doc. 123-2, Ex. A at 2.]

-12-

Case No. 1:08-cv-605
Gwin, J.

agreements' delineation that "This settlement includes: ( ) Towing ( ) Storage  ( ) No Towing or Storage ( ) Other:" requires that "Other" refers to expenses and damages after the vehicle was damaged.

### IV.B.2.  Extrinsic Evidence

An examination of the extrinsic evidence also demonstrates that the parties did not intend the settlement agreements to cover rental-car benefits.  As an initial matter, Defendants say that "'the meaning of ambiguous language [in a contract] is a question of fact.'" [Doc. 152-1 at 13 (citing *Brown v. Columbus All-Breed Training Club*, 789 N.E.2d 648, 653 (Ohio App. 2003).] Defendants are correct that, if the language of a written contract is ambiguous, the intent of the parties is generally a question of fact.  The intent of the parties, however, like any other factual issue, can be resolved at the summary judgment stage when there are no genuine issues of material fact:

> The question of whether the language of a written agreement is ambiguous is one of law; therefore, "it may be resolved summarily."  However, the interpretation of such language, once held to be ambiguous, is a factual issue turning on the intent of the parties.  Summary judgment is then proper only when the documents in question are undisputed and reveal that no question exists as to intent.

*Parrett v. American Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (citations omitted); *see also* 10B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2730.1 (noting that, in contract actions, "[s]ummary judgment will be granted if the documents supporting the Rule 56 motion are undisputed and reveal that there is no question as to intent").

Here, the Defendants direct the Court to deposition testimony of two of the named Plaintiffs. First, in her deposition, Plaintiff Carbon agreed that she the payment in the settlement agreement "would be the only amount of month that [she] would be entitled to." [Doc. 105-8 at 62.] Despite her general agreement to this statement, the context of the question shows that she agreed only that

-13-

Case No. 1:08-cv-605
Gwin, J.

the settlement was all that she was entitled to "[o]n the car." [Doc. 105-8 at 61-62.][9/] This deposition testimony shows that Carbon thought the settlement agreement applied only to the car.

Second, the Defendants direct the Court to the deposition testimony of named Plaintiff Prosser. Plaintiff Prosser was asked for her interpretation of the arising-out-of language, [Doc. 105-4 at 83,] and said she thought this meant that she could not "go back on the company," [Doc. 105-4 at 85.] Defendants say this statement shows that Plaintiff Prosser intended the written settlement agreement to cover rental-car benefits. [Doc. 152-1 at 14.] But in the next answer she explained this language, saying,

> I disputed the amount on the vehicle, but [the adjuster] terminated my rental agreement before he should have. So I am not disputing the amount of the vehicle, because he said it was non-negotiable. I was not getting any more money out of it. That's not what I am disputing at this deposition.

[Doc. 105-4 at 85-86.] These statements do not suggest that the named Plaintiffs intended the total-loss vehicle settlements to cover rental-car benefits.

The remaining extrinsic evidence before this Court, including the additional policy documents apart from the settlement agreements and the documents and deposition testimony on the settlement

---

[9/] The deposition testimony is as follows:

Q. Was it your understanding that if you accepted a check from Nationwide for the amount that they were offering, that that was going to be the total amount that you would be entitled to?
A. On the car?
Q. Yes.

. . .

Q. Was it your understanding that if Nationwide made a payment to you based on [the adjuster's] offer, that that would be the only amount of money that you would be entitled to?
A. Right.
Q. That that would be a done deal?
A. Right.

[Doc. 105-8 at 61-62.]

-14-

Case No. 1:08-cv-605
Gwin, J.

process, shows that the rental-car benefits were not within the scope of the settlement agreements.

First, despite the all-encompassing language used in part of the agreements, Defendants have said that the agreements do not cover any medical-payments benefits. [Doc. 152-1 at 9 n.41.] After a serious car accident that results in a total loss of the vehicle, an insured can still negotiate claims for medical payments after the total loss settlement. Reading the arising-out-of language literally would prohibit later negotiation of medical-payments benefits. [*See* Doc. 136-2, Ex. A at 2 (agreement covers "all claims whatsoever kind or nature").][10/]

The contract additionally describes the amount of the settlement as "Actual Cash Value: $[____], Sales Tax $[____], Total $ [____]." [Doc. 136-2, Ex. A at 2.] Describing the settlement in terms of an actual cash value and sales tax indicates that the settlement is based on the value of the vehicle that Defendants declared a total loss, rather than a broad settlement that covers any expenses that can occur after a total loss to a vehicle.

The policy endorsement describing the rental-car benefits also said that the benefits would last until the parties reached a total settlement agreement. [Doc. 87-10, Ex. 26 at 13.] If the settlement agreements encompassed rental-car benefits, specifically stating that the rental-car benefits terminated at settlement would be surplusage.

Additionally, Plaintiff Van Horn's policy language said: "The limit of our coverage is the

---

[10/] Defendants distinguish between medical-payments benefits, and rental-car benefits, and say that the settlements do not cover medical-payments benefits but do cover rental-car benefits. [Doc. 152-1 at 9 n.41 ("Nationwide has not argued that settling a comprehensive/collision coverage claim (with its related rental claim) effects a settlement of a 'med pay' claim.").] Defendants say that medical-payments benefits are different because (1) they "do[] not require any damage to the vehicle to be triggered," [Doc. 152-1 at 9 n.41,] and because (2) they "arise under a separate policy coverage, and are handled by completely separate adjusters," [Doc. 152-1 at 12.] While the medical-payments benefits may be different, the practice of negotiating those claims after the settlement agreements at issue here shows that the arising-out-of language is not as broad as the Defendants argue.

-15-

Case No. 1:08-cv-605
Gwin, J.

actual cash value of your auto or [i]ts damaged parts at the time of loss. To determine actual cash value, we will consider: 1. fair market value; 2. age; and 3. condition of the property." [Doc. 152-12, Ex. K at 14.] The policy language defines the actual cash value calculation, and this calculation does not include rental-car benefits.

Defendants' practices in settling the claims also show that the settlement agreements do no cover rental-car benefits. Defendants' instructions to employees on settlement of total-loss claims direct employees to confirm the condition of the vehicle. But the employee is not to say "we are offering you $ . . . ." *Id.* Instead, the employees should say "[t]he market value of your vehicle is $ . . . ." [Doc. 87-8, Ex. 4 at 7.]

The deposition testimony on the parties' negotiation also demonstrates that the settlement agreements were only to cover the value of the vehicle. [Doc. 105-8 at 38, Carbon Depo. (noting that the adjuster "gave me the price for the car, and she said if I would go get a price that I paid for the [recently purchased] tires, they might bring the price of the car up a bit"); Doc. 105-4 at 92, Prosser Depo. ("I disputed [the settlement offer] because the value that [the adjuster] gave me was $2,000 less than when I went online and looked at the vehicle that I had, the shape that it was in and everything. I told him, I said, 'That's, like, $2,000 less than what I saw online.'").

Both the four corners of the settlement agreements and the extrinsic evidence show that the parties did not intend the settlement agreements to cover rental-car benefits. Accordingly, Defendants cannot rely on these settlement agreements to defend this suit.

Case No. 1:08-cv-605
Gwin, J.

## V. Conclusion

For the reasons stated above, this Court **GRANTS** Plaintiffs' motion for partial summary judgment.

IT IS SO ORDERED.


Dated: May 04, 2009            s/ *James S. Gwin*
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE