UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
SHANNON VAN HORN, *et al.*, :
: CASE NO. 1:08-CV-605
Plaintiffs, :
:
vs. : OPINION & ORDER
: [Resolving Doc. Nos. 254, 268, 296]
NATIONWIDE PROPERTY AND :
CASUALTY INS. CO., *et al.,* :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this insurance class action, Class Counsel seeks an award of $5,873,716.02 in attorney fees and $226,283.98 in costs for counsels' efforts in prosecuting this case and obtaining the recently-approved class settlement. [Doc. 296.] This aggregate $6.1 million request represents an approximately $800,000 reduction from Class Counsel's original fee request in December 2009. [Doc. 254.] In support of the motion for attorney fees and costs, Class Counsel has submitted four memoranda, numerous affidavits, live testimony, and representative cases. Nevertheless, this Court must independently determine that any fee award be reasonable.

For the following reasons, the Court **GRANTS** Class Counsel's motion and awards Class Counsel $3,179,107.20 in attorney fees and $226,283.98 in costs.

**I. Background**

This case arises out of rental car benefits provided in insurance policies issued by the

Case No. 1:08-CV-605
Gwin, J.

Defendants. Generally, the Plaintiffs claim that the Defendants failed to provide the class members the full rental car benefits required under the policies.

A typical class member's claim arises when she has an auto accident that damages her vehicle in an amount more than the vehicle is worth. Once the class member reports the accident to the Defendant insurance company, the company determines whether the cost to repair the vehicle exceeds the vehicle's value. If so, the insurance company characterizes the vehicle as a total loss. As part of this claims procedure, the Defendants' insurance policies generally promise to cover the class member's expenses for renting a car until she agrees to a settlement or, in the absence of a settlement, for thirty days.

In their class complaint, the Plaintiffs allege that the Defendants have a national practice of breaching their insurance contracts by simultaneously providing the class members a settlement offer and terminating the rental car benefit. On February 10, 2009, this Court certified the Plaintiffs' claims as a class action. On February 24, 2009, the Court denied the Defendants' motion for summary judgment.

On May 11, 2009, the parties reached a settlement. This Court granted preliminary approval for the settlement on September 8, 2009. [Doc. 226.] Prior to the scheduled fairness hearing, however, two class members filed objections. [Doc. 249.] On December 14, 2009, the Court conducted a fairness hearing to consider the proposed settlement, notice to the class, the objectors' concerns, and Class Counsel's motion for attorney fees [Doc. 254.]

Soon after this hearing, the parties and objectors filed various motions relative to the language in the settlement agreement and supplemental notice ordered by the Court. On January 11, 2010, the Court found that these motions demonstrated a fundamental disagreement on the

Case No. 1:08-CV-605
Gwin, J.

settlement terms and accordingly set the case for trial. [Doc. 280.]

On March 19, 2010, however, the parties filed a joint motion to reinstate the settlement. [Doc. 295]. The objecting class members subsequently withdrew their objections. [Doc. 299.] As part of these filings, Class Counsel also filed a Supplemental Motion for Attorney Fees. [Doc. 296.] On March 30, 2010, the Court held a second fairness hearing and approved the settlement reached by the parties. The Court entered its final order and judgment approving the settlement on April 16, 2010. [Doc. 306.]

Accordingly, all that remains in this case are Class Counsel's motions for attorney fees.

## II. Legal Standards & Analysis

"It is within the district court's discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996). Moreover, an award of attorneys' fees in common fund cases need only be "reasonable under the circumstances." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

Courts typically employ one of two methods in analyzing a request for attorneys' fees—the lodestar analysis or the percentage of the fund analysis. *Rawlings*, 9 F.3d at 516-17; *see also Lonardo v. Travelers Indem. Co.*, --- F. Supp. 2d ---, 2010 WL 1416698, at *18 (N.D. Ohio Mar. 31, 2010). To determine the "lodestar" figure, the Court multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). The Court may then adjust the lodestar figure up or down based on a number of factors designed to account for case-specific circumstances. *Id.* at 471-72.

In contrast, under the percentage of the fund method, the court simply determines a

Case No. 1:08-CV-605
Gwin, J.

percentage of the settlement to award the class counsel, based on several case-specific factors. *Rawlings*, 9 F.3d at 516. Often, however, the district court employs both methods, using each as a "cross-check" against on the other. *See, e.g.*, *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 923 (N.D. Ohio 2003); *see also Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996), *affirmed*, 102 F.3d 777 (6th Cir. 1996); *Lonardo*, 2010 WL 1416698, at *25.

In their first and second motions for attorneys fees in this case, Class Counsel asks the Court to apply the lodestar method in calculating the fee award. In their supplemental motion for attorneys fees, Class Counsel argues that the fee request is also reasonable under the percentage of the common fund method. Given Class Counsel's motions and the importance of ensuring that any fee award fairly compensate counsel for both the amount of work done and the results achieved, *Rawlings*, 9 F.3d at 516, the Court calculates the fee award using the lodestar method and cross-checks that calculation using the percentage of the common fund analysis.

**A. Lodestar Calculation**

In determining the lodestar figure, the Court multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate. *Reed*, 179 F.3d at 471. The party seeking attorneys' fees bears the burden of proving the reasonableness of the hourly rates claimed. *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).

*1. Lodestar*

According to Class Counsel, the appropriate lodestar figure in this case is $3,300,310.50 [Doc. 297 at 13.] This figure represents the hours and rates of the three law firms comprising Class Counsel: Kabateck Brown Kellner, LLP; Kisling, Nestico & Redick LLC; and Feazell & Tighe LLP. [*Id.*] In support of the motion for fees, each firm submitted a separate affidavit itemizing its

-4-

Case No. 1:08-CV-605
Gwin, J.

attorneys' and staffs' rates and hours. The Court reproduces a summary of each fee request below:

| Kabateck Brown Kellner LLP[1/] | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Total** |
| Brian Kabateck (partner) | $690 | 785.00 | $541,650.00 |
| Richard Kellner (partner) | $690 | 893.30 | $616,377.00 |
| Niall Yamane (25 yrs.) | $430 | 79.25 | $34,077.50 |
| Ronald Karz (22 yrs.) | $410 | 6.40 | $2,624.00 |
| Alfredo Torrijos (8 yrs.) | $390 | 1,458.90 | $568,971.00 |
| Claudia Candelas (2 yrs.) | $275 | 858.10 | $235,977.50 |
| M. Mark Yenikomshian (1 yr.) | $275 | 52.20 | $14,355.00 |
| Michael Storti (1 yr.) | $250 | 27.10 | $6,775.00 |
| Law Clerks & Paralegals | $150 | 401.57 | $60,235.50 |
| | **Total:** | 4561.82 | $2,081,042.50 |

[Doc. 297 at 17.]

| Kisling, Nestico & Redick, LLC | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Total** |
| Alberto Nestico (partner) | $450 | 1,175.55 | $528,997.50 |
| Gary Kisling (partner) | $550 | 8.00 | $4,400.00 |
| John Reagan | $550 | 155.70 | $85,635.00 |
| Robert Redick (partner) | $450 | 113.00 | $50,850.00 |
| Thomas Vasvari (19 yrs.) | $550 | 35.50 | $19,525.00 |
| Kevin Sandel (14 yrs.) | $350 | 21.40 | $7,490.00 |
| Staff | $75 | 84.00 | $6,300.00 |

---

[1/]Where possible, the Court indicates in parenthesis the relative experience of each attorney.

Case No. 1:08-CV-605
Gwin, J.

|  |  | Total: | 1,593.15 | $703,197.50 |
|---|---|---|---|---|

[Doc. 297-2 at 3.]

| Feazell & Tighe, LLP ||||
|---|---|---|---|
| Name | Rate | Hours | Total |
| Austin Tighe (partner) | $500 | 818.1 | $409,050.00 |
| Vic Feazell (partner) | $550 | 128.6 | $70,730.00 |
| James Twombly (attorney) | $325 | 55.9 | $18,167.50 |
| Michele Porter (paralegal) | $110 | 83.0 | $9,130.00 |
| Lisa Petrie (paralegal) | $110 | 32.0 | $3,520.00 |
| Jonathon Zemek (clerk) | $65 | 84.2 | $5,473.00 |
|  | Total: | 1,201.8 | $516,070.50 |

[Doc. 297-3 at 3.]  In total, Class Counsel seeks $3,300,310.50 in attorney fees for 7,356.77 hours of work on this class litigation.

As to the hours reported, the Defendants do not object to the hours and this Court finds no reason to doubt or dispute the figures provided by Class Counsel.  The Court does not, however, believe that the hourly rates requested by Class Counsel are reasonable in this case.

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).  Therefore, "The appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation."

*B&G Mining, Inc. v. Director, Office of Workers Comp. Programs*, 522 F.3d 657, 663 (6th Cir.

Case No. 1:08-CV-605
Gwin, J.

2008).[2]

In determining a reasonable hourly rate, the court may consider a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar requests for fees. *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007).

Here, counsel generally support their hourly rates with affidavits detailing their skill and experience. Class Counsel also provides affidavits from two well-regarded Northeast Ohio attorneys stating that having reviewed the instant case, the hourly rates are reasonable. [Doc. 297-4, 297-5.] Although the Court greatly respects both Class Counsel's collective skill and experience as well these two attorneys' learned opinions, comparable cases in the Northern District of Ohio, as well as this Court's own experience, strongly suggest that lower rates are appropriate here.

For example, in *Kelly v. Montgomery Lynch & Assocs., Inc.*, 2008 WL 4560744, at *1 (N.D. Ohio Oct. 8, 2008), a class action under the Fair Debt Collection Practices Act and Ohio Consumer Sales Practice Act, this Court approved an hourly rate of $300 for lead counsel, a Cleveland attorney with thirty-two years of legal experience. This attorney had handled over 1,000 consumer cases and served as class counsel in numerous consumer class actions. *Id.* at *3.

Similarly, in *Abel v. Keybank, U.S.A., N.A.*, 2005 WL 2216938, at *2 (N.D. Ohio Sept. 12, 2005), the court somewhat reluctantly approved hourly rates of $325 and $375 for class counsel. In that case, counsel successfully negotiated a class action settlement under the Truth in Lending Act, including an award of $1,500 in statutory damages for each class member. *Id.* at *1.

Rates in this range are not universal in this district, however. As recently as March 2010, a

---

[2] Under this standard, the Court does not find persuasive the cases cited by Kabateck Brown Kellner LLP regarding fee awards in the Central District of California and the District of New Jersey. [Doc. 297 at 23-24.]

Case No. 1:08-CV-605
Gwin, J.

court approved rates ranging from $90-$825 in a national class action insurance litigation. *Lonardo, 2010 WL 1416698*, at *22. Similarly, in 2003, the court approved "equalized" rates from $200 to $500 per hour in the settlement of a multi-district products liability class action. *Sulzer*, 268 F. Supp. 2d at 926. In a 2006 case submitted by Class Counsel, the hourly rates approved by the court ranged from $125-$500 an hour. *Baughman v. State Farm Mut. Auto. Ins. Co.*, CV 95 082982 (Summit County Common Pleas Court, Sep. 28, 2006). [Doc. 304-1 at 35.]

Considering all of these cases as well as the Court's own knowledge and experience handling fee requests, a reasonable hourly rate for this type of case in this district is $250 for an associate, $300 for a senior associate, $350 for a junior partner, and $400 for a senior partner. Given their unique skills and experience, the Court further sets a reasonable hourly rate for lead counsel at $450.

Applying these rates, as set out below, the appropriate lodestar in this case is $2,649,256.00.

| **Kabateck Brown Kellner LLP** | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Total** |
| Brian Kabateck (partner) | $450 | 785.00 | $353,250.00 |
| Richard Kellner (partner) | $450 | 893.30 | $401,985.00 |
| Niall Yamane (25 yrs.) | $400 | 79.25 | $31,700.00 |
| Ronald Karz (22 yrs.) | $400 | 6.40 | $2,560.00 |
| Alfredo Torrijos (8 yrs.) | $300 | 1,458.90 | $437,670.00 |
| Claudia Candelas (2 yrs.) | $250 | 858.10 | $214,525.00 |
| M. Mark Yenikomshian (1 yr.) | $250 | 52.20 | $13,050.00 |
| Michael Storti (1 yr.) | $250 | 27.10 | $6,775.00 |
| Law Clerks & Paralegals | $150 | 401.57 | $60,235.50 |
| | **Total:** | 4561.82 | $1,521,750.50 |

Case No. 1:08-CV-605
Gwin, J.

| Kisling, Nestico & Redick, LLC | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Total** |
| Alberto Nestico (partner) | $450 | 1,175.55 | $528,997.50 |
| Gary Kisling (partner) | $400 | 8.00 | $3,200.00 |
| John Reagan | $400 | 155.70 | $62,280.00 |
| Robert Redick (partner) | $400 | 113.00 | $45,200.00 |
| Thomas Vasvari (19 yrs.) | $400 | 35.50 | $14,200.00 |
| Kevin Sandel (14 yrs.) | $300 | 21.40 | $6,420.00 |
| Staff | $75 | 84.00 | $6,300.00 |
| | **Total:** | 1,593.15 | $666,597.50 |

| Feazell & Tighe, LLP | | | |
|---|---|---|---|
| **Name** | **Rate** | **Hours** | **Total** |
| Austin Tighe (partner) | $450 | 818.1 | $368,145.00 |
| Vic Feazell (partner) | $450 | 128.6 | $57,870.00 |
| James Twombly (attorney) | $300 | 55.9 | $16,770.00 |
| Michele Porter (paralegal) | $110 | 83.0 | $9,130.00 |
| Lisa Petrie (paralegal) | $110 | 32.0 | $3,520.00 |
| Jonathon Zemek (clerk) | $65 | 84.2 | $5,473.00 |
| | **Total:** | 1,201.8 | $460,908.00 |

*2. Multiplier*

Class Counsel further asks the Court to employ a 1.78 multiplier. In its discretion, a court may use a multiplier to enhance the lodestar figure in recognition of the "risk an attorney assumes in undertaking a case, the quality of the attorney's work, and the public benefit achieved." *Rawlings, 9 F.3d at 515-51*7. By its very nature, a multiplier is a "bonus" to the attorneys, compensating them

-9-

Case No. 1:08-CV-605
Gwin, J.

beyond what they would otherwise have earned from a paying client.

In determining whether a requested multiplier is appropriate, the Court seeks guidance from the six factors identified by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*: (1) the value of the benefit rendered to the class, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides. *Sulzer*, 268 F. Supp. 2d at 930 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

As the Supreme Court has recently cautioned, however, courts should hesitate to employ a multiplier, especially when the factors supporting a multiplier have already been considered in the underlying lodestar calculation. *Perdue v. Kenny A. ex rel. Winn*, --- U.S. ---, 2010 WL 1558980, at *8 (April 21, 2010). Although decided in the context of statutory fee shifting under 42 U.S.C. § 1988, *Perdue* nevertheless provides persuasive caution that multipliers must be reserved for "rare" and "exceptional" circumstances. *Id*. Although this Court does not read *Perdue* to prohibit the use of multipliers in class actions, the case does suggest that enhancements are atypical and should not duplicate the same considerations affecting the lodestar rate.

This Court has already considered the second, fourth, and sixth *Ramey* factors in determining a reasonable hourly rate and does not duplicate their impact by considering them again. Accordingly, the Court examines whether the value of the benefit rendered to the class, the contingency risks, and the complexity of the litigation justify the use of multiplier in this case.

As to the benefit rendered to the class, the settlement makes available a common fund of $27,651,288.83 less any attorney fee award, costs, and administrative expenses. [Doc. 294 at 4.]

Case No. 1:08-CV-605
Gwin, J.

From this fund, each class member is entitled to a maximum benefit of $199.44.[3/] As calculated by Class Counsel, this recovery represents an average of 7.67 days of additional rental coverage. [Doc. 296 at 21.] This result is a moderately good one. Because most class members had fifteen days of rental benefits remaining at the time of termination, the $199.44 recovery represents approximately fifty percent of an average class member's damages. [Doc. 296 at 21.] But as was foreseeable in cases where class members received relatively small individual settlements, only a small percent of eligible class members have made claims. Per Class Counsel's estimation at the March 2010 fairness hearing, class members made approximately $4 million in claims.[4/] [Doc. 303 at 5.]

As expressed at both the December 2009 and March 2010 fairness hearings, however, this Court still questions whether the settlement gave "outstanding" recovery. The named Plaintiffs gave evidence that Nationwide stopped car rental payments when Nationwide made its property settlement offer. Also, Nationwide made settlement offers fashioned to stop its customers' attempts to negotiate any higher payment for the totaled car. Against this backdrop, the class members' rental benefits claims were small when compared to the amount the policyholders may have lost if the termination of rental benefits pressured them to accept Nationwide's property loss offer. The Court finds little support to characterized the settlement as "outstanding."

Moreover, Class Counsel might have negotiated for other settlement mechanisms that would have theoretically increased the payout to the class, rather than agreeing on a mechanism that

---

[3/]This amount represents an approximately $100 increase from the original settlement agreement.

[4/]As Class Counsel correctly observes, this amount may increase due to the supplemental notice to the class ordered by the Court.

-11-

Case No. 1:08-CV-605
Gwin, J.

"regularly yield[s] response rates of 10 percent or less."[5] *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005); *see also In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 404 (D. Mass. 2008) ("It is not unusual for only 10 or 15% of the class members to bother filing claims.") (alterations omitted);

The Court acknowledges that every settlement involves some degree of compromise and that in achieving any benefit for the class, Class Counsel must often sacrifice terms that would guarantee a greater payout to the class (and accompanying expense to the Defendants). Faced with a difficult trial and the risk of no recovery at all, the class members' fifty percent recovery is a good result. It is not, however, such an extraordinary one that Class Counsel must be compensated nearly double their fees.

Regarding the contingent nature and complexity of the case, these factors suggest that Class Counsel should receive some multiplier. The Court notes that the time period of this litigation was relatively short, concluding about two years after initially filed. Moreover, nearly eight months of that time included settlement discussions and preparation of the settlement agreement and fees requests in this case.

Although this case concerned numerous insurance companies and policies written over the course of fifteen years, at its core the case presented only a breach of contract claim. Granted, the "class action" nature of the case increased its complexity and required significant discovery and motions practice. Nevertheless, the case is not one based on a "novel" legal theory or unproven grounds for recovery. Instead, it involves only the question of whether an alleged practice breaches

---

[5] For example, given the contractual nature of the class members' relationships with the Defendant insurance companies, the parties might have provided for some class members to receive refunds directly based on the Defendants' claim records.

Case No. 1:08-CV-605
Gwin, J.

the class members' insurance contracts.

In fact, in awarding fees to class counsel who had spent approximately 7,765 hours on "not an easy case," the court in *Lonardo* employed only a 1.3 multiplier. *Lonardo*, 2010 WL 1416698, at *22.[6] This Court recognizes that class counsel in *Lonardo* had requested the 1.3 multiplier and that the *Lonardo* court found the average multiplier in class actions to be 3.89, *id.*; nevertheless, the case provides an instructive example that not every result merits double recovery for class counsel. Also, the *Lonardo* holding is consistent with *Perdue*'s holding that "the lodestar method yields a fee that is presumptively sufficient," and this "presumption is a strong one," but "that enhancements may be awarded in rare and exceptional circumstances." *Perdue*, supra at *6. (Citations and quotations omitted.)

Considering the above factors, the Court applies a 1.2 multiplier. This yields a total attorney fee award of $3,179,107.20. The Court cross-checks this award against the percentage of the common fund calculation.

### B. Percentage of Common Fund

In calculating a fee award as a percentage of the common fund, the Court considers the ratio of the attorneys fee to the total class benefit. As pressed by this Court at the March fairness hearing in this case and as recognized by the *Lonardo* court, the definition of "total class benefit" is a matter of unsettled law. *Lonardo*, 2010 WL 1416698, at *26-27.

For example, in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-81 (1980), the Supreme Court recognized that the amount of funds *available* to the class was a benefit to the class. Although some courts have relied on *Boeing* and otherwise required that the total available fund be considered, *see,*

---

[6] Importantly, *Lonardo* was filed on March 31, 2010, and before the April 21, 2010, Supreme Court's opinion in *Perdue* encouraging restrictions upon enhancements.

Case No. 1:08-CV-605
Gwin, J.

*e.g.*, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) (holding that district court abused its discretion by calculating fees based strictly on actual recovery); *Williams v. MGM-Pathe Commun. Co.*, 129 F.3d 1026 (9th Cir. 1997) (same), other courts have examined only the amount actually claimed by class members. *See, e.g.*, *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 852-53 (5th Cir. 1998 (affirming award of attorney fees based strictly on actual claims); *Wise v. Popoff*, 835 F. Supp. 977, 982 (E.D. Mich. 1993) (calculating fees based on actual recovery and noting that "[a]lthough the Supreme Court has authorized courts to award attorney's fees based on the entire fund, *Boeing* . . . such a method is not mandated."). Moreover, the Manual for Complex Litigation endorses a fee award that is based on funds actually bestowed. Federal Judicial Center, *Manual for Complex Litigation* (Fourth) § 27.71 (2004).

The Sixth Circuit has not answered the question directly, but has suggested that courts could look to the available recovery rather than the recovery claimed. *See Moulton v. United States Steel. Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) ("Claimants, it is true, will in the aggregate receive less than Class Counsel. But that is because just 4,026 class members submitted claims. Except for fees and costs, class members had the first shot at the settlement proceeds—nearly $ 2.5 million by our estimate—which exceed the amount paid to Class Counsel by some measure.")

In *Lonardo*, the court fashioned a compromise between these two extremes. On one hand, the court recognized that a fee award should give class counsel an incentive to structure a settlement in a manner that encourages actual recovery by the class. 2010 WL 1416698, at *29. On the other hand, the court observed that class counsel cannot force class members to actually make claims. *Id.* Balancing these two considerations, the court set the benefit to the class as the midpoint between the available funds and the claimed funds. *Id.*

Case No. 1:08-CV-605
Gwin, J.

This Court approves of the above reasoning and employs the same midpoint analysis. In this case, the settlement agreement provides a maximum of $27,651,288.83 for the class, *inclusive* of any fee award. [Doc. 294 at 4.] Subtracting the $3,405,391.18 in attorney fees and costs yields a benefit available to class members of $24,245,897.65. In contrast, the class has made approximately $4 million in claims. Generously assuming that claims will increase by fifty percent due to the enhanced award available and supplemental notice, the class will have claimed only $6 million of the available funds. The midpoint of this available benefit and likely claimed benefit is $15,122,948.83. Assuming correct Class Counsel's assertion that 22 percent of the recovery fairly represents their efforts in this case, the percentage of the common fund calculation yields a fee award of $3,327,048.74. Because this figure represents only a $147,972 difference from the lodestar calculation, it confirms this Court's finding that $3,179,107.20 represents a reasonable attorney fee in this case.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Class Counsel's motion and awards Class Counsel $3,179,107.20 in attorney fees and $226,283.98 in costs.

IT IS SO ORDERED.

Dated: April 30, 2010     s/ *James S. Gwin*
                          JAMES S. GWIN
                          UNITED STATES DISTRICT JUDGE